UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
Lexington Division

IN RE:                                           :
                                                 :     Chapter 13
LABRAWN FRANKLIN HOLMAN,                         :     Case No. 12-50023
                                                 :     Judge Wise
                         Debtor                  :
_____          :

**MEMORANDUM OPINION AND ORDER GRANTING RELIEF FROM STAY
AND DENYING CREDITOR'S REQUEST TO TERMINATE REQUIREMENT
TO COMPLY WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1**

This matter is before the Court on the Motion for Relief from Automatic Stay [Doc. 23] ("Motion") filed by PNC Bank, National Association ("PNC") against Debtor. The Motion requests relief from stay to allow PNC to enforce its lien against Debtor's principal residence located at 406 Creekview Drive, Paris, Kentucky 40361 ("Residence"). In connection therewith, PNC also requests relief from the obligations imposed by Federal Rule of Bankruptcy Procedure 3002.1 ("Rule 3002.1"), *i.e.*, providing notice of any changes in the payment amount to the Debtor, Debtor's counsel and the Chapter 13 Trustee.

The Court sought additional briefing on the issue of whether the requirements of Rule 3002.1 apply; and if so, should be excused, upon entry of an order granting the creditor relief from the automatic stay. [*See* Doc. 24]. Consistent with its Motion, PNC advocates termination of the application of Rule 3002.1 once stay relief is granted. [*See* Doc. 26]. The Chapter 13 Trustee sides with PNC [*see* Doc. 30], and the U.S. Trustee ("UST") takes a contrary position, *i.e.*, that the Court is not authorized to waive the requirements of Rule 3002.1 [*see* Doc. 31]. The Debtor did not file an objection to the Motion or a brief regarding the Rule 3002.1 matter. The Court now has the matter under submission for ruling. [*See* Doc. 33].

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O). Based on the record and the

pleadings, the Court will grant PNC relief from stay but will not excuse PNC from its obligation to comply with Rule 3002.1.

## FACTS

On April 24, 2006, Debtor executed a note to National City Mortgage, a predecessor of PNC. Debtor also executed a mortgage on his Residence to secure the note.

Debtor filed his Voluntary Chapter 13 Petition and Chapter 13 Plan ("Plan") on January 6, 2012. The Plan was confirmed on February 27, 2012. The Plan provides for the cure of a pre-petition arrearage of $17,564.03 due on the note. The Chapter 13 Trustee pays the arrearage in monthly installments while the Debtor makes post-petition payments directly to PNC pursuant to the terms of the underlying note and mortgage. [Plan § II.B.1 & Proof of Claim 2-1]. The Plan further provides that "[i]f at any time during the life of the plan an order terminating the automatic stay is entered, no further distributions shall be made to the Creditor until such time as an amended claim for any deficiency is filed and allowed." [Plan § II.D.].

On August 15, 2012, PNC filed the Motion.

## LAW AND ANALYSIS

**A.    Purpose of Rule 3002.1.**

Rule 3002.1 applies only in chapter 13 cases and only "to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan." FED. R. BANKR. P. 3002.1(a). Rule 3002.1 further provides in part:

> (b) *Notice of Payment Changes*. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the [Chapter 13 Trustee] a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.
>
> (c) *Notice of Fees, Expenses, and Charges*. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the [Chapter 13 Trustee] a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

2

FED. R. BANKR. P. 3002.1.

Section 1322(b)(5), referenced in Rule 3002.1, provides that a chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). A chapter 13 plan of this nature is sometimes referred to as a "cure and maintain plan."

Rule 3002.1 is a procedure designed to promote the policy of providing debtors with a fresh start. *In re Sheppard*, No. 10-33959, 2012 WL 1344112, *2 (Bankr. E.D. Va. Apr. 18, 2012). It addresses the all-too-common situation when, after completion of the plan, the creditor asserts the debtor is still delinquent and restarts the foreclosure cycle the chapter 13 petition was filed to prevent. The disclosures help insure the debtor and chapter 13 trustee receive information from a creditor regarding any changes in the amount of the debt during the course of the chapter 13. The information should allow the debtor to adjust payments so the pre-petition arrearage is cured during the course of the plan and the debtor is current in post-petition payments when the plan is complete. See FED. R. BANKR. P. 3002.1;[1] Eugene R. Wedoff,

---

[1] The Advisory Committee Note to Rule 3002.1 provides:

> [The rule] is added to aid in the implementation of § 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of the debtor's plan. It applies regardless of whether the trustee or the debtor is the disbursing agent for postpetition mortgage payments.
> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee must be informed of the exact amount needed to cure any prepetition arrearage, and the amount of the postpetition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment. Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay.

FED. R. BANKR. P. 3002.1 advisory committee's note (citation omitted).

*Proposed New Bankruptcy Rules on Creditor Disclosure and Creditor Enforcement of the Disclosures—Open for Comment*, 83 Am. Bankr. L.J. 579, 582 (2009) (Rule 3002.1 allows debtors and trustees to "deal appropriately with creditor claims.").

There is no doubt that PNC is currently subject to the requirements of Rule 3002.1. The question is whether Rule 3002.1 continues to apply after stay relief is granted.

**B.    The Obligations under Rule 3002.1 Do Not End When Stay Relief Is Granted.**

    **1.    Rule 3002.1 Applies after Stay Relief Is Granted**.

PNC argues that once stay relief is granted, Rule 3002.1 no longer applies to a creditor because the debt is no longer "provided for" under the cure and maintain provision of § 1322(b)(5) of the plan as required by Rule 3002.1(a)(2). The Court disagrees. While it is true, the debt is no longer <u>being paid</u> as part of the cure and maintain plan provision, this does not alter that the claim remains <u>provided for</u> under that section of the plan.

The phrase "provided for…in the plan" as used in the Bankruptcy Code has been similarly interpreted by case law and commentators. For example, § 1328(a) provides for discharge of debts "provided for by the plan." *Collier on Bankruptcy* observes:

> The Code does not specifically define "provided for," and some creditors have argued that if a plan does not propose to make payments on a debt it does not provide for that debt. The Court of Appeals for the Ninth Circuit properly rejected this argument in *Lawrence Tractor Co. v. Gregory* (*In re Gregory*),705 F.2d 1118 (9th Cir. 1983), which held that to "provide for" a claim a plan need only "make a provision for it, i.e., deal with it or refer to it." This broad definition of the term "provided for" was subsequently adopted by the Supreme Court in *Rake v. Wade*, 508 U.S. 464, 473 (1993). Even if the plan proposes nothing to unsecured claimants, ... their claims may be discharged under section 1328(a).

8 COLLIER ON BANKRUPTCY ¶1328.02[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citations added).

The Court discerns no reason why a different interpretation of the phrase "provided for" should be used in the context of Rule 3002.1 and concludes that a "cure and maintain claim" remains "provided for" in a plan after stay relief. Relief from the stay does not change the essential fact that a plan was confirmed as a cure and maintain plan pursuant to § 1322(b)(5). A

4

conclusion that Rule 3002.1 is no longer effective after stay relief seems to require a determination that the plan as confirmed is not the same plan after relief from the stay.  This logic ignores the lack of any court-approved modification of the confirmed plan as would be required by § 1329.  11 .U.S.C. § 1329.[2]

### 2. Trustees and Debtors have a Continuing Need for Rule 3002.1 Disclosures.

PNC argues that, when debtors cease making payments (the basis for stay relief), they are no longer making payments on arrearages.  PNC concludes that it "makes no practical sense for the creditor to be required to file notices of payment changes or notices of advances for costs/taxes/insurance or other amounts provided for under the terms of the note and mortgage …."  [Motion 1-2].  PNC's arguments fail because they would allow a creditor to cease sending information before the full benefit of Rule 3002.1 is received by debtors and trustees.

It is easy to contemplate the need for the information required by Rule 3002.1 after stay relief is granted.  Stay relief does not prevent a debtor from attempting to keep his home. Following stay relief, a debtor may seek to defend a foreclosure action, enter into a loan modification, propose further plan amendments, or sell the residence by private sale.  Required Rule 3002.1 disclosures, such as changes in rates, late fees and penalties, will assist a debtor in any of these post-stay relief options and thus serve the Code's policy of a fresh start.  Requiring continued disclosure may further benefit the debtor and chapter 13 trustee in their review of a creditor's post-foreclosure deficiency claim.

This is particularly true in judicial foreclosure jurisdictions like Kentucky.  *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 554 (Ky. 2008) ("Kentucky is a judicial foreclosure state requiring the filing of a circuit court action to pursue foreclosure as a remedy."); KY. REV. STAT. ANN. § 452.400(3) (West 2012); *see also Alexander v. Springfield Prod. Credit Ass'n*, 673 S.W.2d

---

[2] The Chapter 13 Trustee suggests that requiring the Rule 3002.1 disclosures after stay relief will burden the Trustee by requiring her to comply with Rule 3002.1(f) even after the residence has been sold.  This argument does not alter the Court's interpretation of the requirements of Rule 3002.1 (a)-(c).

5

741, 743 (Ky. Ct. App. 1984) (validity of indebtedness must be adjudicated prior to sale of secured property).

The statutory framework for a foreclosure proceeding in a judicial foreclosure state necessarily extends the proceeding. By contrast, foreclosure sales occur more rapidly in states that permit foreclosure sales without judicial process[3] or in states, such as Wisconsin, that provide for a shortened redemption period in exchange for creditors waiving a deficiency judgment.[4] These differences in state foreclosure procedures highlight (and may explain) different conclusions from courts in other jurisdictions which hold that after being granted relief from the automatic stay, creditors are no longer subject to the requirements of Rule 3002.1. *See e.g., In re Thongta*, 480 B.R. 317 (Bankr. E.D. Wis. 2012) (recognizing that deficiency claims were an extremely rare event in Wisconsin). As reviewed above, Debtor's confirmed Plan contemplates the filing of deficiency claims:

> **D. Orders Granting Relief from Stay.** If at any time during the life of the plan an order terminating the automatic stay is entered, no further distributions shall be made to the Creditor until such time as an amended claim for any deficiency is filed and allowed. [Plan, § II.D].

Merely because the Residence may be foreclosed upon does not prevent the Debtor from completing his Plan. Unlike the circumstances described in *Thongta*, creditors in this District file deficiency claims regularly. Thus, the Court agrees with the UST that during the pendency of a chapter 13 proceeding, the requirements of Rule 3002.1 terminate when a debtor's right to cure ends; that is, when the Debtor no longer has title to the property:

> Until a foreclosure sale occurs, timely notice of information about the debtor's mortgage may be vital if the debtor seeks to modify the plan, *see* 11 U.S.C. § 1329, or exercise any rights to cure the default or redeem the property that may be applicable under the Bankruptcy Code or non-bankruptcy law. The ability to

---

[3] *See generally*, R. Wilson Freyermuth, *Foreclosure by Arbitration?*, 37 Pepp. L. Rev. 459 (2010) (discussing differences in process and length of time required to complete foreclosures under judicial and non-judicial procedures).

[4] *See* WIS. STAT. ANN. § 846.101 (West 2012) (providing for shortened six month—rather than twelve month—redemption period where mortgagee waives deficiency judgment).

>   provide a cure ends only when the foreclosure sale is actually conducted.  11
>   U.S.C. § 1322(c)(1).

Response of the United States Trustee [Doc. 31 at 5].

C. **It Is Not Necessary to Determine Whether the Court May Waive the Requirements of a Bankruptcy Rule.**

The supplemental briefing took sides on whether a bankruptcy court may waive application of Rule 3002.1.  It is not necessary to reach this issue because even if the requirements of Rule 3002.1 can be waived after stay relief is granted, this Court declines to do so.

D. **Conclusion**

Based on the foregoing, **IT IS HEREBY ORDERED** that the Motion [Doc. 23] is **GRANTED** as to PNC's request for relief from stay to enforce its lien against the Residence.  The Motion is **DENIED** insofar as it requests that PNC be excused from further compliance with Rule 3002.1.

**Copies to:**

Charles A. Grundy, Jr., Esq.
Beverly M. Burden, Esq.
John L. Daugherty, Esq.
David C. Nalley, Esq.

7

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge
Dated: Friday, March 15, 2013
(tnw)**